385 So.2d 298 (1980)
Woody H. NICHOLS, Individually and as the Curator of the Interdict, Lynda Leona Nichols
v.
Reubin K. HODGES et al.
No. 13084.
Court of Appeal of Louisiana, First Circuit.
March 31, 1980.
*299 Robert S. Cooper, Jr., Baton Rouge, of counsel for plaintiff-appellant Woody H. Nichols, Indv.
Robert J. Vandaworker, Baton Rouge, of counsel for defendant-appellant Reubin K. Hodges, Lloyd W. Prine, Prine Building Materials, Inc. and Southern Farm Bureau Casualty Ins. Co.
David W. Robinson, Baton Rouge, of counsel for defendant-appellee Government Employees Ins. Co.
Daniel R. Atkinson, Baton Rouge, of counsel for defendant-appellee Allstate Insurance Company.
Lawrence A. Durant, Baton Rouge, of counsel for third party defendant-appellee The Ron Miller Corporation.
James E. Kuhn, Denham Springs, of counsel for third party defendant Thomas M. Stewart.
William M. Faller, Baton Rouge, of counsel for third party defendant-appellee Lafayette Insurance Company.
Before ELLIS, CHIASSON and PONDER, JJ.
*300 ELLIS, Judge:
Lynda Leona Nichols was badly injured when the automobile she was driving, which was owned by James L. Mansell, was struck by a truck owned by Prine Building Materials, Inc., and operated by Reubin K. Hodges. This suit was filed by Woody H. Nichols, individually and as curator of Miss Nichols, who has been interdicted, for general and special damages occasioned by her injuries. Mr. Nichols died after judgment was rendered below, and Mrs. Leona J. Adamson Nichols, his widow, and mother of Lynda, qualified as curatrix and has been substituted as party plaintiff.
Defendants are Lloyd W. Prine, doing business as Prine Building Materials; Prine Building Materials, Inc.; Reubin K. Hodges; Louisiana Farm Bureau Mutual Insurance Company, their insurer; Government Employees Insurance Company, uninsured motorist insurer of the Mansell car; and Allstate Insurance Company, uninsured motorist insurer of an automobile belonging to Mr. Nichols.
Both GEICO and Allstate third partied Mr. Prine, Prine Building Materials, Inc., Mr. Hodges and Louisiana Farm, asking indemnification. Mr. Prine, Prine Building Materials, Inc., Mr. Hodges and Louisiana Farm third partied the Ron Miller Corporation, Thomas M. Stewart and Pat Sumerall asking for indemnification or contribution. It is alleged that Miller is the proprietor of the "J" Club and Mr. Stewart and Mr. Sumerall the proprietors of the "Jantom Lounge." They are alleged to be liable because they sold intoxicating beverages to Mr. Hodges on the night before the accident, causing him to become intoxicated, which is alleged to be a cause of the accident. Mr. Stewart third partied Lafayette Insurance Company, which he alleges to be his liability insurer.
Issue was joined on all demands except by Pat Sumerall, who made no appearance.
After trial on the merits, judgment was rendered against Prine Building Materials, Inc., Mr. Hodges, Louisiana Farm, GEICO and Allstate, in solido, and in favor of Woody H. Nichols, individually, for $60,226.15, and as curator of Lynda Leona Nichols for $1,762,878.79. The judgment as to Louisiana Farm, GEICO and Allstate was restricted to their respective limits of liability.
Judgment was further rendered in favor of GEICO and Allstate on their third party demands against Prine Building Materials, Inc., and Mr. Hodges to the full extent of the judgment against them on the main demand. All other demands and third party demands were dismissed.
Prine Building Materials, Inc., Mr. Hodges and Louisiana Farm applied for a new trial, which was granted as to the issue of the cost of future care of Lynda Leona Nichols. A hearing was held thereon, at which evidence was offered by plaintiff and defendants. Thereafter, final judgment was signed which increased the award to the curatrix of the interdict to $2,241,179.50, and which is otherwise the same as the original judgment.
From this judgment, Prine Building Materials, Inc., and Louisiana Farm have appealed. Plaintiff has appealed as against Lloyd W. Prine and Allstate Insurance Company only.

ON THE MOTION TO DISMISS
Plaintiff has filed a motion to dismiss the appeal taken by Prine Building Materials, Inc., and Louisiana Farm. It is alleged that, since no appeal was taken on behalf of Reubin K. Hodges, and since the liability of Prine is based on the doctrine of respondeat superior, the appellants may raise only the question of whether Mr. Hodges was in the course and scope of his employment. It is further argued that, since Mr. Hodges' employment is admitted, there is no basis for the appeal.
The argument is without merit. These appellants are entitled to have reviewed all facets of the case which affect the nature and extent of their liability. This includes the liability of Mr. Hodges and the extent of the award. See Robertson v. Perry, 370 So.2d 596 (La.App. 4th Cir. 1979) and cases cited therein.
The motion is denied.

*301 ON THE MERITS
The accident happened at about 12:45 p. m. on April 9, 1976, at the point where Wax Road forms a "T" intersection with Louisiana Highway 37. Directly across from Wax Road, on the east side of Highway 37, is the private driveway leading to the property of Woody H. Nichols. Highway 37 is an asphalt surfaced, two-lane highway, the traveled portion thereof being 24 feet in width. There is a double yellow line in the center of Highway 37 from Wax Road northerly for a distance of over 500 feet, signifying a no passing zone. There is a curve in the highway about 500 feet north of the intersection. Vehicles rounding the curve, traveling in a southerly direction, can see the Nichols driveway from a distance of about 550 feet.
Miss Nichols was driving Mr. Mansell's car in a southerly direction, going to her father's home. She made a left turn across the northbound lane to enter the driveway. As her front wheels were at or near the edge of the pavement, her vehicle was struck by the 1973 Ford one-ton flatbed truck operated by Mr. Hodges.
Mr. Hodges was also driving southerly on Highway 37. He testified that, as he came out of the curve, he saw the Nichols vehicle coming to a stop ahead of him, with the brake lights on. He stated that he was too close to stop without hitting her, and so pulled to the left to avoid the accident. At the same time, he testified that she made her left turn. He applied his brakes, but could not avoid the accident. The truck left 93 feet of skid marks leading up to the point of impact, and pushed the Nichols vehicle 54 feet further. Mr. Hodges estimated his speed at about 65 miles per hour. He did not observe any lights on the rear of the car other than the brake lights.
The impact was witnessed by Mr. Nichols, James L. Mansell, and Ricky Murphy, all of whom were in Mr. Nichols' yard. Mr. Nichols and Mr. Mansell both observed that the left turn flasher on the Nichols vehicle was working as she was turning. They heard the screech of the truck's brakes and saw the impact. Their testimony is that, at the time of the impact, Miss Nichols' car was entirely obstructing the northbound lane of the highway, with the front wheels either just on or just off the pavement, and the rear end barely into the southbound lane.
There is a great deal of expert testimony in the record as to the time that it took Miss Nichols to turn from the southbound lane to the point of impact. These estimates vary from two and one-half seconds, assuming she was going 10 miles per hour when she began the turn, to six and one-half seconds, assuming she made the turn from a stop. There is no firm evidence in the case from which it can be learned exactly how and at what speed Miss Nichols made the turn. Assuming the shorter time of two and one-half seconds, the truck would have been about 240 feet from the point of impact at the time she started her turn, and still in the southbound lane of traffic.
The law applicable to such cases is clear. In Adams v. Travelers Indemnity Company, 277 So.2d 685 (La.App. 2nd Cir. 1973), the court said:
"A motorist who attempts a left turn or who attempts to turn from a direct line on the public highways of the state must ascertain in advance that the turn can be made without endangering normal overtaking or oncoming traffic. The giving of a signal is not the only burden placed on the motorist for he must, in addition, check the rear immediately before the turn is attempted to ascertain whether it can be executed safely. (Citations omitted.)
"The law is equally clear that a motorist has the unquestioned right to assume the following traffic will observe all the duties imposed on it by law and common sense, such as that the following traffic will proceed within the speed limit and will not pass at an intersection where passing is prohibited; and moreover, that the drivers of such vehicles are keeping a proper lookout."
Considering the expert testimony in the record as to stopping times and distances, it is evident that under the circumstances *302 most favorable to defendants Mr. Hodges could have easily avoided the accident by remaining in his proper lane of travel and slowing his vehicle. It is likewise clear that, had Miss Nichols looked in her rear view mirror before beginning her turn, as she is required to do by law, she would have seen the truck over 240 feet to her rear, in its proper lane, sufficiently distant so that no emergency situation would be created by a left turn. Even without the double yellow line painted on the road surface, Miss Nichols would not be required to anticipate that the truck would attempt to pass her on the left.
We think it obvious that, had Mr. Hodges been keeping a proper lookout, he would have seen the Nichols vehicle in ample time to have avoided this accident. His negligence in failing to do so is the sole cause thereof. His employer, Prine Building Materials, Inc., and the insurer, Louisiana Farm, are solidarily liable with him, the latter only to the extent of its policy limits.
The record does not support plaintiff's contention that Mr. Prine should be found liable individually. It is claimed that Mr. Prine should have known that Mr. Hodges was intoxicated and was negligent in permitting him to operate the truck. The evidence shows that, on the night before the accident, Mr. Hodges consumed substantial quantities of beer and whiskey, which he bought at the J Club and the Jantom Lounge, and that he became very intoxicated. During the same period of time he also smoked some marijuana cigarettes, but the record does not show where these were obtained, or to what extent they may have contributed to his intoxication. Mr. Hodges got home at 2:30 or 3:00 o'clock a. m., an event of which he had no recollection, and was at work by 8:30 a. m. Mr. Prine noticed nothing unusual in his behavior at that time. Mr. Hodges delivered a load of building material and was returning to the lumber yard when the accident happened, at about 12:45 p. m. Despite a blood alcohol level of 0.12 grams percent, the record does not preponderate to the effect that Mr. Hodges' driving ability was impaired at the time of the accident, some nine or ten hours after he had gone to bed. The officer who investigated the accident saw nothing to indicate intoxication on Mr. Hodges' part, and had the blood test administered only because Mr. Hodges told him that he had been drinking the night before.
The trial judge was satisfied that there was no liability as to Mr. Prine, under the foregoing circumstances, and we find no manifest error in this determination.
We further find no error in the dismissal of the third party demands against the bar owners. Plaintiff failed to prove the owner of the Jantom Lounge; failed to prove what amount of intoxicant might have been consumed at either bar; and failed to prove that Mr. Hodges' alleged intoxication was a proximate cause of the accident. We do not wish to imply that there would have been liability on the part of the bar owners for injuries caused to others by an intoxicated patron. No court has yet held this to be the law in Louisiana. See Thrasher v. Leggett, 373 So.2d 494 (La. 1979). Moreover, in this case there is not sufficient factual basis for such a finding under any circumstances.
Plaintiff's appeal as to Allstate involves the limits of liability under the uninsured motorists portion of the policy written for Mr. Nichols. The liability portion of the policy had limits of $100,000.00 per person and $300,000.00 per accident. When the policy was written, it provided the same limits for the uninsured motorists portion. Prior to this policy, the Nichols had maintained only $5,000.00/$10,000.00 UM coverage. When Mrs. Nichols inquired about the increased premium, she was told about the increase in the UM coverage. Mrs. Nichols elected to decrease the UM limits, and signed the proper reduction application. Subsequently, an amended policy was sent to the Nichols, showing the UM coverage reduced to $5,000.00/$10,000.00 and the reduced premium, which was paid.
Mrs. Nichols testified that they had asked that the limits be reduced to $50,000.00/$100,000.00 rather than *303 $5,000.00/$10,000.00; that the reduction application which she signed was blank, and that she never received an endorsement to the policy. It is clear that an amended policy was mailed to the Nichols.
The trial judge found that the applicable limits of the policy were $5,000.00/$10,000.00, and limited the judgment against Allstate to $5,000.00. We find no error in his determination. Plaintiff's argument that the original limits of the policy must apply because the provisions of R.S. 22:628 were not complied with, is without merit. The Nichols were not sent an endorsement or separate contract by Allstate. An amended policy, which entirely superseded the original policy, was forwarded to them, and must have been received, since it was produced in response to a subpoena duces tecum. We think the record reflects that the Nichols were fully informed as to the coverage of their policy, and that it was in accord with their wishes.

QUANTUM
The record is clear that Lynda Leona Nichols is incapacitated for life, both mentally and physically, as a result of the accident. She will need constant nursing care, therapy, supervision and medical treatment for the rest of her life. She was 17 years old when the accident happened.
The trial court awarded $750,000.00 as general damages and $1,408,857.38 as special damages covering the cost of future medical care and treatment. The trial judge's original written reasons relative to quantum are as follows:
"As a result of this accident, Lynda suffered severe and permanent injuries. Dr. William L. Fisher, a neurosurgeon, removed a blood clot from the temporal lobe of Lynda's brain and also removed the damaged surrounding tissue. He described the injury as permanent. Her chances of becoming self-sustaining are nil. She cannot walk or crawl. She cannot turn overshe cannot stand without assistance. She has very limited control of her bowels or her bladder. She has organic brain impairment. She can speak, but with a defect and a limited vocabulary. She has only partial use of her right arm and no use of her other extremities. There is severe contractual deformity of the heels, elbows and feet. She will require physical therapy at least twice weekly for the remainder of her life. She will require care 24 hours per day. Her life expectancy has not been decreased. She is child-like, and there is no chance, no possibility of improvement. Lynda was born June 2, 1958, making her 17 years of age at the time of the accident.
"Dr. John Chisolm, Professor Emeritus, Louisiana State University, Department of Economics, testified regarding Lynda's economic loss. In his calculations, he considered one visit per week from a physical therapist. He made numerous calculations using an increase in productivity and discounting. He used the annual loss of Lynda's mother's salary, the use of a licensed practical nurse two shifts per day and for two weeks every year, three shifts per day, and the cost of a live-in companion over the balance of Lynda's life expectancy. The future cost of care amounted to more than $1,300,000.00 after considering inflation and after being discounted. Dr. Chisolm testified that he used a very conservative approach in his calculations.
"The record contains evidence of the nature and kind of therapy Lynda is having and must continue to receive. The evidence also reflects other injuries she received in the collision. The evidence has proven that Lynda has endured great physical pain and suffering and that the pain and suffering will continue for many years. It would simply be a cliche to state that no amount of money can compensate her for her injuries. The law, nonetheless, mandates that an award be made. In view of all of the evidence in the case, the Court fixes as general damages the sum of $750,000.00.
"Dr. Chisolm's exact figure on the cost of care was $1,350,505.06. Since Dr. Fisher expressed the opinion that Lynda did not *304 require the services of a licensed practical nurse at all times, the Court feels that a one-fourth reduction in Dr. Chisolm's total is required. The total cost of care, reduced to $1,012,878.79, added to $750,000.00 equals $1,762,878.79."
Following the rendition of judgment, Mr. Hodges, Prine Building Materials and Louisiana Farm applied for a new trial, which was granted, but limited to the issue of the cost of future care. After that hearing, the following reasons for judgment were rendered:
"The Court now finds that the testimony of Dr. Chisolm at the second trial is convincing. His analysis is as follows:
"1. A live-in companion for 1 eight-hour shift per day, 7 days a week;
"2. A Home Health Aide for 1 eight-hour shift per day, 5 days a week; and
"3. A physical therapist for 3 visits per week from 11/14/77 to 11/14/78 and 1 visit per week thereafter.
"Using 3% per annum to account for inflation and productivity and 5% to discount to present value, the total arrived at was $848,350.19.
"The Home Health Aide is paid $4.75 per hour for personal care, bathing, feeding, etc. Therapists are paid $29.00 per hour, an hour being the usual time for one treatment. The live-in companion is paid $38.00 per day for 8 hours, and provides no personal care. Licensed Practical Nurses are paid $10.50 per hour.
"The cost of one L.P.N. working one shift per day, 7 days a week (with 3% annual increases and discounted by 5%) is $1,023,534.88.
"Thus the total cost of future care is $1,871,885.07. From this total, the Court feels that a reduction is in order. The discounted cost of the live-in companion is $463,027.69. Mrs. Nichols has left her employment to help care for her daughter. The Court will award to Lynda the discounted value of her mother's loss of wages, $82,322.12, in lieu of the award for the live-in companion. Therefore, we deduct $463,027.69 from $1,871,885.07 and then add $82,322.12 to the award making a total of $1,408,857.38."
Procedurally, Prine Building Materials and Louisiana Farm allege that the trial judge erred in permitting the plaintiff to offer evidence at the hearing on the motion, and in increasing the award, when the motion had been made by the defendants-appellants and not by the plaintiff. No authority is offered in support of this proposition.
Article 1978 of the Code of Civil Procedure provides:
"It shall not be necessary to resummon the witnesses or to hear then anew at a new trial if their testimony has once been reduced to writing, but all such testimony and evidence received on the former trial shall be considered as already in evidence. Any party may call new witnesses or offer additional evidence, and with the permission of the court recall any witness for further examination or cross examination as the case may be. However, the parties shall not be precluded from producing new proofs, on the ground they have not been offered on the first trial. When a new trial is granted for reargument only, no evidence shall be adduced."
We find no limitation on the authority of the trial judge to hear witnesses or change the judgment, regardless of which party applied for the new trial.
Defendants-appellants also claim that the awards for both general and special damages are excessive and based on "unproved speculation and unsound hypothetical formulas." Our examination of the record reveals ample support for the findings of the trial judge as to the necessity for the medical care and therapy for which he awarded damages. Each side in the case put on an expert economist who testified as to the appropriate method of calculating the present value of the medical care and therapy which Lynda would require in the future. He accepted the opinion of plaintiff's expert, and we find no manifest error. Neither do we find any abuse of discretion in the award of $750,000.00 as general damages, in the light of the nature and extent of Lynda's injuries.
*305 At the trial, it was shown that Mrs. Nichols, Lynda's mother, had quit her job in order to care for Lynda. The present value of her lost wages was awarded to Lynda as an item of damages. Defendants-appellants claim that this is an improper award. As can be seen from the trial judge's reasons, supra, this amount was awarded in lieu of the much higher salary of a licensed practical nurse, whose place in Lynda's care would be filled by Mrs. Nichols. Mrs. Nichols' lost wages were used as a measure of the value of her services to Lynda, and we find no error in utilizing this means of fixing that part of the award.
Defendants-appellants further claim that the court erred in failing to consider the impecunious circumstances of Mr. Hodges, Mr. Prine and Prine Building Materials, Inc., in fixing damages. Mr. Prine was not cast in judgment, and there is no evidence as to the financial circumstances of Prine Building Materials, Inc. There is, therefore, no basis for a reduction as to the latter defendant. Mr. Hodges did testify as to his own lack of resources, but we could hardly reduce the judgment as to him and leave it unchanged as to Prine Building Materials, as they are solidarily liable.
Defendants-appellants also claim that the expert witness fees granted by the court are excessive. The fees awarded are in line with the testimony in the record, and we find no error.
The final judgment signed herein did not properly assess the interest due by Louisiana Farm, and that error will be corrected herein.
The judgment appealed from is amended so as to provide that interest paid by Louisiana Farm Bureau Mutual Insurance Company shall be at the legal rate on their policy limits from date of judicial demand until the date of the final judgment, April 11, 1979, and on the full amount of the judgment from April 11, 1979, until the full amount of the policy limits is paid or tendered; and as amended it is affirmed. All costs of this appeal shall be paid by Prine Building Materials, Inc., and Louisiana Farm Bureau Mutual Insurance Company.
AMENDED AND AFFIRMED.