433 So.2d 125 (1983)
Reubin K. HODGES
v.
SOUTHERN FARM BUREAU CASUALTY INSURANCE COMPANY and Louisiana Farm Bureau Mutual Insurance Company.
No. 82-C-1314.
Supreme Court of Louisiana.
May 23, 1983.
Rehearing Denied June 27, 1983.
*126 Donna W. Lee, Lee & Greenfield, Baton Rouge, for applicant.
John J. Hainkel, Jr., Porteous, Toledano, Hainkel, New Orleans, for respondent.
Robert S. Cooper, Jr., Baton Rouge, for intervenor-respondent.
BLANCHE, Justice.
The sole issue in this case is whether certain documents, withheld by the defendant insurance company, are subject to discovery. Although the trial court ordered the production of several of the documents requested by the plaintiff, it refused to direct the disclosure of the remaining papers. The court of appeal granted writs in part and ordered the defendant to produce one additional document. We granted the plaintiff's application for writs to examine the rulings of the lower courts in light of our discovery provisions, La.C.C.P. arts. 1421-1474.
This present controversy arises out of an "excess judgment" suit filed by the plaintiff, Reubin Hodges, against Louisiana Farm Bureau Mutual Insurance Company. In order to more fully appreciate the intricate nature of the discovery problem presented, however, we begin our recitation of the facts with the automobile collision involving Reubin Hodges and Lynda Leona Nichols.
*127 Lynda Nichols was seriously injured when the car she was driving was struck by a truck operated by Reubin Hodges and owned by Prime Building Materials, Inc. The curatrix of Lynda Nichols sued Reubin Hodges and Louisiana Farm Bureau, among others, to recover for the injuries she sustained in the accident. Louisiana Farm Bureau had issued a policy providing insurance coverage to a limit of $100,000 on the truck driven by Hodges at the time of the accident. Pursuant to the terms of that policy, Louisiana Farm Bureau undertook the defense of the Nichols suit. It employed the services of an attorney, Robert Vandworker, to represent both Reubin Hodges and Louisiana Farm Bureau. The case proceeded to trial where judgment was rendered on April 11, 1979 against the defendants, in solido, for an amount exceeding $2.3 million. The judgment against Louisiana Farm Bureau was restricted to its $100,000 policy limits. This judgment was affirmed by the court of appeal and became final when this Court denied the defendants' application for certiorari on May 9, 1980.[1]
On September 16, 1980, Hodges filed a petition for "excess judgment" against Louisiana Farm Bureau. Hodges alleged that he had suffered serious economic loss as well as mental suffering due to the defendant's bad faith and/or negligence and/or breach of contractual duties by: (1) failing to adequately investigate the [Nichols] claim; (2) failing to keep petitioner informed of the progress of the action; (3) failing to communicate the offer or offers to settle within the policy limits to petitioner; (4) failing to timely settle for the policy limits; (5) failing to timely advise petitioner of the possibility of an excess judgment being rendered and the consequences thereof; (6) failing to give equal consideration of the interests of petitioner in this matter; (7) disregarding petitioner's desire to protect himself from financial loss; and (8) other acts and/or omissions to be determined at the trial of the case. Hodges prayed for a sum of over $2.45 million which included the $2.3 million judgment against him together with damages for mental pain, humiliation and embarrassment.
In connection with his suit for excess judgment, Hodges caused a subpoena and a subpoena duces tecum to issue on October 13, 1980 to two employees of Louisiana Farm Bureau. One of the employees, James Garmon, was the vice-president of claims for Louisiana Farm Bureau. The other employee, William Barker, was a district claims manager. The subpoenas and subpoenas duces tecum summoned the recipients to appear for the taking of their depositions on November 14, 1980, and ordered them to produce, at that time, the entire file and all records dated between April 9, 1976 and November 14, 1980, whether personal or belonging to Louisiana Farm Bureau, concerning their handling of the Nichols v. Hodges case.
On November 14th, Garmon and Barber appeared for the taking of their depositions accompanied by John Hainkel, the attorney representing Louisiana Farm Bureau in the excess judgment action. Hainkel informed plaintiff's counsel that he had, in his possession, Louisiana Farm Bureau's complete file, from April 9, 1976 until November 14, 1980, on the Nichols v. Hodges case. Although he agreed to produce several documents in the file, Hainkel refused to disclose those documents which he considered to be protected by the attorney-client privilege. Counsel for plaintiff objected and subsequently filed a motion to compel production of all the papers in the defendant's file which were dated between April 9, 1976 and November 14, 1980, including those documents considered privileged by Hainkel. After a hearing, the trial judge held that the attorney-client privilege was not applicable; accordingly, he ordered Louisiana Farm Bureau to make available, for inspection and copying, the documents which were requested by the plaintiff. Shortly thereafter, Louisiana Farm Bureau produced a number of the papers from its file for the plaintiff's inspection.
*128 After an examination of the documents which had been disclosed by Louisiana Farm Bureau in compliance with the court order, counsel for plaintiff realized that several documents were obviously missing. Although the trial court had ordered the production of documents dated through November 14, 1980, none of the papers revealed to the plaintiff were dated later than December 20, 1978. Consequently, plaintiff filed another motion to compel the production of all the documents contained in the defendant's file which were dated between April 6, 1978 and November 14, 1980. Also included in this motion was a request that the defendant be held in contempt for failing to comply with the trial court's previous order to produce.
During the hearing on the motion for contempt and/or to produce documents, Hainkel submitted the documents in dispute to the trial judge for an in camera inspection. These documents, which were made a part of the record on appeal, are divided into two sets. One set contains correspondence between Garmon and another vice-president of claims for Louisiana Farm Bureau, Hartwell Bowling. The other set of documents includes correspondence between Vandaworker (counsel for Hodges and Louisiana Farm Bureau in the Nichols suit) and Louisiana Farm Bureau. All of the documents in both sets discuss the likelihood of an excess judgment and the possibility of entering into an agreement with the original plaintiff, Nichols, to settle all claims he had against Louisiana Farm Bureau and Hodges. The dates on the documents range from March 8, 1979 to November 11, 1980.
At the hearing on the motion, Hainkel contended that the documents withheld by Louisiana Farm Bureau only concerned its handling of the excess judgment action and not the underlying Nichols v. Hodges lawsuit. Thus, Hainkel maintained that the documents were not discoverable under C.C.P. art. 1424, for they were prepared in "anticipation of litigation", i.e. the excess judgment lawsuit. Alternatively, Hainkel argued that the documents were not relevant. The trial court accepted the position advanced by the defendant's counsel and refused to order the production of the two sets of documents, finding that they were prepared in anticipation of the excess judgment action and were not concerned with the merits or handling of the underlying suit. Plaintiff Hodges applied to the court of appeal for writs, contending that all of the documents were discoverable. The court of appeal granted writs in part, but only ordered the production of one of the documents, a letter dated May 29, 1980 from Garmon to Vandaworker.[2],[3]
The problem to be resolved in this case is whether the two sets of documents withheld by Louisiana Farm Bureau can be discovered. We first will examine the history and purpose of our present discovery system and then, within the framework of the discovery provisions, address the specific question of discovery posed by this case.
SOURCE AND PURPOSE
Modern discovery procedure did not become a reality in Louisiana until 1952. Prior to 1952, the discovery system was variously described by commentators as "inadequate" and faulted in design and purpose. L. Hubert, Depositions and Discovery, 13 La.L.Rev. 173 (1953); Comment, Discovery Procedure and its Louisiana Counterparts, 2 La.L.Rev. 525 (1940). In fact, Professor Hubert expressed doubt whether a discovery system existed at all. Hubert, p. 177. Prompted by the favorable reception given to the federal rules of discovery as well as the inadequacies of the existing discovery statutes, the Louisiana Legislature adopted Act 202 in 1952. Preliminary *129 Statement, Book 2, Title 3, Chapter 3, Louisiana Code of Civil Procedure of 1960; Hubert, p. 177. The provisions in this Act closely followed the Federal Rules of Civil Procedure of 1937 and created more effective methods for obtaining information. See Preliminary Statement; Comment, Louisiana's Discovery Articles: A Modern Appraisal, 22 Loy.L.Rev. 130 (1976). In 1976, the discovery system in Louisiana underwent a second revision with the adoption of Act 574. The discovery rules of 1952 were replaced by articles 1421 through 1474 of the Code of Civil Procedure. Patterned in large part after the 1970 revision of the federal rules of discovery, the new discovery statutes were designed to increase the effectiveness and efficiency of the discovery devices. F. Maraist, Recent Changes in Louisiana Discovery Law: An Analysis of Act No. 574 of 1976, 24 La.B.J. 161 (Dec. 1976). Because the Louisiana statutes on discovery are derived from the federal rules and contain many similar provisions, Louisiana courts, interpreting Louisiana discovery laws, have frequently relied on federal jurisprudence under analogous federal provisions as persuasive authority. See Ogea v. Jacobs, 344 So.2d 953 (La.1977) and authorities cited therein.
The basic objectives of the Louisiana discovery process are (1) to afford all parties a fair opportunity to obtain facts pertinent to the litigation, (2) to discover the true facts and compel disclosure of these facts wherever they may be found, (3) to assist litigants in preparing their cases for trial, (4) to narrow and clarify the basic issues between the parties, and (5) to facilitate and expediate the legal process by encouraging settlement or abandonment of less than meritorious claims. State v. Spruell, 243 La. 202, 142 So.2d 396 (1962); Bennett v. General Motors Corp., 420 So.2d 531 (La.App. 2nd Cir.1982); Comment, Louisiana's Discovery Articles: A Modern Appraisal, 22 Loy.L.Rev. 130 (1976). The discovery statutes are to be liberally and broadly construed to achieve its intended objectives. See generally, Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947); Burns v. Thiokal Chemical Corporation, 483 F.2d 300 (5th Cir.1973); 8 Wright & Miller, Federal Practice and Procedure, § 2001, p. 17 (1970 ed.).
SCOPE
Articles 1422-1425 of the Code of Civil Procedure define the scope of permissible discovery and are applicable to all discovery devices. See Maraist, p. 162. Generally, the articles permit discovery regarding any matter not privileged, which is relevant to the subject matter of the action. C.C.P. art. 1422. Consequently, the initial inquiry in most discovery problems is whether the matter sought to be discovered is relevant.
RELEVANCE
Only matter which is relevant may be subjected to discovery. La.C.C.P. art. 1422 mimics the language in Federal Rule 26(b)(1) and provides that the matter sought to be discovered must be relevant to "the subject matter involved in the pending action."[4]
The pending action in this case is one for excess judgment. It is based upon the acts or omissions of Louisiana Farm Bureau during the period of time it defended the insured, Hodges, against the suit initiated by Nichols. Hence, any document which reflects the actions taken or discussed by Louisiana Farm Bureau or its attorney during the pendency of the Nichols suit regarding that suit would be relevant to the subject matter of the excess judgment action.
At first glance, it appears that all of the documents withheld by Louisiana Farm Bureau are relevant to the action for excess judgment. The two sets of documents in dispute contain numerous references to settlement offers made by Louisiana Farm Bureau to the original plaintiff, Nichols. These documents do relate, therefore, to actions taken by Louisiana Farm Bureau in connection with the Nichols claim. However, *130 as noted earlier, the excess judgment suit is founded solely upon the acts of the insurer during the pendency of the Nichols litigation. The Nichols suit became final on May 9, 1980 when this Court denied writs of certiorari. On that date, the insurer's duty to defend ceased. Any documents which reflect actions taken by Louisiana Farm Bureau after May 9, 1980, therefore, have no bearing on the plaintiff's claim; they are irrelevant.
Our examination reveals that the latest date on the two sets of undisclosed documents is November 11, 1980. The documents after May 9, 1980 only reflect the actions taken by the insurer subsequent to May 9th. For this reason, we find that the documents dated after May 9, 1980 are irrelevant, and, thus, not discoverable under C.C.P. art. 1422.
Louisiana Farm Bureau argues that only those documents bearing dates before the filing of the Nichols suit are relevant. His contention is founded upon the fact that Hodges limited the alleged wrongful failure to settle to this period in his petition for excess judgment.[5]
We find no merit in the defendant's argument. The question of relevance is not tied to the allegations of fact in the pleadings. Rather, as expressly stated in Article 1422, the matter need only be relevant "to the subject matter involved in the pending action." This standard for relevance provides flexibility to our system of fact-pleading. See Comment (b) to C.C.P. art. 854; Comment, Fact Pleading v. Notice Pleading: The Eternal Debate, 22 Loy.L.Rev. 47 (1976); J. Tucker, Proposal for Retention of the Louisiana System of Fact Pleading, Espose des Motifs, 13 La.L.Rev. 395 (1953). The parties are free to discover all matter which is germane to the action. If a new issue, not pleaded, is uncovered through discovery, the liberal rules governing amendment of pleadings give the trial court the discretion to consider the issue. See C.C.P. arts. 1151-1154. In this way, discovery serves to facilitate the full litigation of all claims between the parties to the action.[6],[7]
Louisiana Farm Bureau further argues that the documents are irrelevant due to the compromise it entered into with Nichols wherein Nichols settled all claims he had against Hodges and Louisiana Farm Bureau. We find no merit in this argument. Hodges expressly retained his right against Louisiana Farm Bureau for mental anguish, harassment and embarrassment alleged in the suit for excess judgment.[8]
PRIVILEGE[9]
Matter which is privileged cannot be discovered. C.C.P. art. 1422. Grounds of privilege recognized at trial, such as the privilege against incrimination or professional privileges, are generally applicable to discovery. 4 Moore's Federal Practice, § 26.60[1], p. 26-227; 8 Wright & Miller, § 2016, p. 122. In this present case, Louisiana Farm Bureau does not assert any privilege in relation to the undisclosed documents.
TRIAL PREPARATION MATERIAL
Even though a writing may be deemed relevant and not privileged, it may *131 still be immune from discovery under La.C. C.P. art. 1424 if prepared in anticipation of litigation by the adverse party, his attorney, surety, indemnitor, expert or agent. This immunity, however, is qualified. The trial court has the discretion to order the production of a writing prepared in anticipation of trial if it is convinced that the denial of production "will unfairly prejudice the party seeking the production or inspection in preparing his claim or defense or will cause him undue hardship or injustice."[10]
The trial judge held that both sets of undisclosed documents in this case were prepared in "anticipation of litigation" and thus immune from production by Art. 1424. He did not consider whether the denial of production would unfairly prejudice Hodges in preparing his claim or would cause him undue hardship or injustice.
We find the trial court's ruling to be in error. Although we agree that the two sets of documents withheld by Louisiana Farm Bureau were prepared in anticipation of litigation, whether it be the underlying Nichols claim or the excess judgment action, we find that nonproduction of the documents would unfairly prejudice Hodges in preparing his claim. The excess judgment suit instituted by Hodges concerns the activities of Louisiana Farm Bureau during its defense of the Nichols claim. The two sets of undisclosed documents are important to Hodges in establishing his claim, for they represent a record of those actions taken by the insurer in connection with the Nichols suit. Without these materials, Hodges would be unable to effectively present his case. Moreover, he cannot obtain the substantial equivalent of these documents by other means. The accuracy of the materials cannot be duplicated by depositions of the insurer's officers or its attorney who must rely upon their memory.
Our final consideration is whether those documents which reflect the opinions of Mr. Vandaworker should be immune from discovery under Article 1424. Vandaworker was employed by Louisiana Farm Bureau as the attorney to represent Louisiana Farm Bureau and Hodges in the Nichols suit. The last sentence of paragraph one of Article 1424 provides:
"The court shall not order the production or inspection of any part of the writing that reflects the mental impressions, conclusions, opinions, or theories of an attorney or an expert."
This so-called "opinion work product" rule is derived from Federal Rule 26(b)(3).[11] The rule is "distinct from and broader than the attorney-client privilege." United States v. Nobles, 422 U.S. 225, 238 n. 11, 95 S.Ct. 2160, 2170 n. 11, 45 L.Ed.2d 141 (1975); Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947); In re Murphy, 560 F.2d 326 (8th Cir.1977). Whereas the attorney-client privilege protects only confidential communications, the opinion work product doctrine may encompass any writing prepared in anticipation of litigation by the attorney. In re Special September 1978 Grand Jury, 640 F.2d 49 (7th Cir. 1980); Diversified Industries v. Meredith, 572 F.2d 596 (8th Cir.1977). The purpose of the work product doctrine is not merely to assist the client in obtaining complete legal advice, but also to afford the attorney a "zone of privacy" within which he is free to evaluate and prepare his case without adversarial *132 scrutiny.[12]In re Grand Jury Subpoena Dated Nov. 8, 1979, 622 F.2d 933 (6th Cir.1980); Coastal States Gas Corp. v. Department of Energy, 617 F.2d 854 (D.C.Cir. 1980); In re Grand Jury Proceedings, 604 F.2d 798 (3rd Cir.1979); In re Murphy, 560 F.2d 326 (8th Cir.1977); James Julian, Inc. v. Raytheon Co., 93 F.R.D. 138 (D.Del.1982); Hercules v. Exxon Corp., 434 F.Supp. 136 (D.Del.1977).
We find that the Vandaworker correspondence does not fall within the scope of the protection provided by the opinion work product rule expressed in Article 1424. Although Vandaworker was hired by Louisiana Farm Bureau, he was employed to represent both Hodges and the insurer. Vandaworker's legal opinions or theories concerning the Nichols claim benefitted not only Louisiana Farm Bureau, who seeks to prevent their disclosure, but also Hodges, who strives to discover them. We see no reason to forbid Hodges, the client, from discovering the work product of his own attorney within whom he placed his confidence and trust during the pendency of the Nichols claim. Surely, the policy underlying the opinion work product doctrine would not be served by such nondisclosure. An adversary is not intruding upon the privacy of the attorney; it is the client. Moreover, an insured is less likely to place his full confidence with the insurer's attorney if the attorney's complete file on the case is not available for his inspection.

DECREE
For the reasons expressed hereinabove, the orders of the lower courts are amended. The defendant is hereby ordered to produce those documents in its file on the case entitled Nichols v. Hodges (385 So.2d 298 (La. App. 1st Cir.), writ denied, 386 So.2d 355 (1980)) which are dated on or before May 9, 1980. It is further ordered that those documents in the defendant's file bearing dates after May 9, 1980 are not subject to discovery. The case is hereby remanded to the district court for further proceedings in accordance with law and in conformity with the views expressed in this opinion.
DIXON, C.J., concurs.
WATSON, J., dissents and assigns reasons.
WATSON, Justice, dissenting.
In a well-written and scholarly opinion, the majority takes a firm stand in favor of the discovery of relevant documentary evidence. The problem is that the trial court and the court of appeal have already ordered disclosure of all of the relevant communications. The author of this dissent has read the entire file and has found absolutely nothing not yet disclosed which has any bearing on the suit for excess judgment (or which might lead to the discovery of admissible evidence). LSA-C.C.P. art. 1422. Likewise, the majority points out nothing with specificity which should have been revealed but was not.
The trial court and the court of appeal did an excellent job and this court has many more significant matters with which to deal.
*133 Therefore, I respectfully dissent from the majority opinion as I did from the granting of the writ application.
NOTES
[1] Nichols v. Hodges, 385 So.2d 298 (La.App. 1st Cir.), writ denied, 386 So.2d 355 (La. 1980).
[2] Hodges v. Southern Farm Bureau Casualty Insurance Co., et al., No. 82-CW-0214 (La. App. 1st Cir.1982).
[3] After we granted writs in this case, Louisiana Farm Bureau, Hodges and Nichols entered into an agreement of compromise. Hodges agreed to dismiss all of the claims he had against Louisiana Farm Bureau in excess of its policy limits. However, Hodges retained his right to claim mental anguish, harrassment, and suffering as a result of the acts or omissions of Louisiana Farm Bureau during its defense of the Nichols suit.
[4] Several authorities have equated the phrase "relevant to the subject matter involved" with the term "germane." 8 Wright & Miller, § 2008, p. 16 (1982 Supp.); Local 13, Detroit Newspaper Union v. NCRB, 598 F.2d 267, 194 U.S.App.D.C. 348 (1979).
[5] Paragraph 10 of the petition for excess judgment states:

"Prior to suit, the defendant insurers had several reasonable opportunities, all completely unknown and unreported to the petitioner, to settle the Nichols' claim within the financial limits of the policy of insurance aforementioned."
[6] Broad discovery is also essential in the federal system which has notice-pleading, for discovery aids in defining and clarifying the issues. Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978); Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947).
[7] This construction of the standard for relevance furthers the attainment of all of the objectives of discovery discussed earlier.
[8] We do not comment on the validity of this claim.
[9] Because we have found that those documents bearing dates after May 9, 1980 are irrelevant and not discoverable, the following discussion involving privilege and trial preparation materials is limited to the relevant documents, those dated on or before May 9, 1980.
[10] Federal Rule 26(b)(3) also provides protection to trial preparation material. The party seeking this material must show that he has "substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Although the wording of our statute is different, we stated in Ogea v. Jacobs, 344 So.2d 953 (La.1977), that our standard for producing trial preparation material is the same as that set forth in rule 26(b)(3). Consequently, federal decisions construing Rule 26(b)(3) are persuasive authority.
[11] Federal Rule 26(b)(3) reads in pertinent part as follows:

"In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."
[12] In Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), Justice Murphy stated:

"Historically a lawyer is an officer of the court and is bound to work for the advance of justice while faithfully protecting the rightful interests of his clients. In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and necessary way in which lawyers act within the framework of our system of jurisprudence to promote and protect their client's interest. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible waysaptly through roughly termed by the Circuit Court of Appeals in this case as the `work product of the lawyer.'"