STEPHEN J. PLOUE
v.
INTERCOASTAL FINANCIAL GROUP, INC., AERO SPEED MARINE, L.L.C., AND STAN WARE.
No. 2008 CA 2314.
Court of Appeals of Louisiana, First Circuit.
May 8, 2009.
Not Designated for Publication
ROBERT G. HARVEY, Sr. Attorney for Plaintiff-Appellee Stephen J. Ploue.
ANDREW S. deKLERK, T. PATRICK O'LEARY, Attorneys for Defendant-Appellant Intercoastal Financial Group, Inc.
Before: PETTIGREW, McDONALD, and HUGHES, JJ.
PETTIGREW, J.
In this case, the trial court, without oral or written reasons, granted summary judgment in favor of plaintiff, Stephen 3. Ploue, finding defendant, Intercoastal Financial Group, Inc. ("Intercoastal"), liable to Mr. Ploue pursuant to La. R.S. 9:2782.2. The trial court ordered Intercoastal to pay Mr. Ploue $243,304.00, together with attorney fees in the amount of $2,500.00. Intercoastal appealed, asserting that genuine issues of material fact remained, which preclude summary judgment under La. R.S. 9:2782.2. Intercoastal argues further that summary judgment was premature as it was granted before Intercoastal had the opportunity to conduct adequate discovery and before the case was set for trial, as required by La. Code Civ. P. art. 966(C)(1). Mr. Ploue contends that Intercoastal cannot use its own inaction in choosing not to conduct discovery as a basis for arguing that summary judgment was premature. Moreover, Mr. Ploue argues Intercoastal is liable to him, as a matter of law, pursuant to La. R.S. 9:2782.2. For the reasons set forth below, we reverse and remand.

FACTS AND PROCEDURAL HISTORY
At all times pertinent hereto, Mr. Ploue was the owner of a 2002 36' Eliminator that he desired to sell. In 2006, he listed the vessel for sale at the price of $185,500.00. Mr. Ploue received an offer to purchase the vessel from Brian G. Simpson. It is unclear from the record exactly what events transpired after Mr. Ploue decided to sell his vessel to Mr. Simpson. What is clear, however, is that there was some type of arrangement between Intercoastal and Aero Speed Marine, Inc. ("Aero Speed") whereby Intercoastal would provide financing for the sale of the vessel from Mr. Ploue to Mr. Simpson. According to the record, certain documents were exchanged between the parties regarding the sale of the vessel, and, upon completion of said documents, Mr. Ploue was instructed to deliver the vessel to Aero Speed and its owner, Stan Ware. On December 1, 2006, Intercoastal issued a check in the amount of $120,594.60 payable to Capital One, on behalf of Mr. Ploue, for the purpose of satisfying the existing lien on the vessel.[1] On December 15, 2006, Mr. Ploue received notification from Capital One that the original promissory note on the vessel had been paid off. Sometime thereafter, Mr. Ploue was notified that Intercoastal had stopped payment on the $120,594.60 check, with this amount being charged back to Mr. Ploue.
On December 28, 2006, Mr. Ploue sent a letter to Aero Speed and Mr. Ware inquiring about the stopped-payment check and the whereabouts of the vessel. Then, on April 11, 2007, Mr. Ploue sent a letter to Intercoastal demanding payment in full of the amount of the check, plus a service charge of five percent of the face amount of the check, pursuant to La. R.S. 9:2782.2.[2] When Intercoastal did not respond to his letter, Mr. Ploue filed the instant suit for damages on June 22, 2007, naming as defendants Intercoastal, Aero Speed, and Mr. Ware. Mr. Ploue sought damages, penalties, and attorney fees. According to the record, Intercoastal was served pursuant to the Louisiana Long Arm Statute in July 2007 and filed an answer on October 9, 2007. However, there is no indication in the record that either Aero Speed or Mr. Ware were ever served with the petition for damages. On March 13, 2008, Mr. Ploue filed a motion for summary judgment, arguing there was no genuine issue of material fact regarding Intercoastal's liability under La. R.S. 9:2782.2.
Intercoastal opposed the motion for summary judgment, asserting that Mr. Ploue's motion must fail for three reasons. First, Intercoastal argued that because it had not yet had the opportunity to conduct adequate discovery and the case had not yet been set for trial, the motion was premature. Next, Intercoastal maintained that based on the facts of the case, Mr. Ploue could not meet his burden with regard to the allegation that he is a holder in due course, a prerequisite for his recovery under La. R.S. 9:2782.2. Finally, Intercoastal asserted there were clear issues of fact with regard to the existence of its obligation that precluded summary judgment under La. R.S. 9:2782.2.
Notwithstanding Intercoastal's opposition, the trial court granted Mr. Ploue's motion for summary judgment on May 13, 2008. In a judgment signed May 27, 2008, the trial court found as follows:
IT IS ORDERED, ADJUDGED AND DECREED that Plaintiffs Motion for Summary Judgment is hereby GRANTED, finding that there is no genuine issue of material fact in dispute that Intercoastal Financial Group, LLC, (drawer) is liable to Stephen Ploue, holder in due course of the check (payee), pursuant to Louisiana Revised Statute 9:2782.2 for two times the amount of the stopped payment check of $121,652.00, totaling $243,304.00, together with attorney fees in the amount of $2,500, together with all cost of these proceedings and judicial interest from the date of demand.
It is from this judgment that Intercoastal has appealed,[3] assigning the following specifications of error:
1. The Trial Court abused its discretion in granting Summary Judgment before Intercoastal had the opportunity to conduct adequate discovery and before the case was set for trial, as required by Louisiana Code of Civil Procedure article 966(C)(1).
2. The Trial Court erred in finding that no genuine issues of material fact were in dispute that would undermine any of the essential elements to Appellee Stephen Ploue's claim in this case under Louisiana Revised Statute 9:2782.2.

DISCUSSION
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. Board of Sup'rs of Louisiana State University v. Louisiana Agr. Finance Authority, XXXX-XXXX, p. 8 (La. App. 1 Cir. 2/8/08), 984 So.2d 72, 79. Summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact, and the mover is entitled to judgment as a matter of law. La. Code Civ. P. art 966(B). In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Lewis v. Four Corners Volunteer Fire Dept., XXXX-XXXX, p. 4 (La. App. 1 Cir. 9/26/08), 994 So.2d 696, 699.
Generally, a motion for summary judgment may only be granted "[ajfter adequate discovery or after a case is set for trial." La. Code Civ. P. art. 966(C)(1). Under La. Code Civ. P. art. 967, a trial judge clearly has the discretion to issue a summary judgment after the filing of affidavits, or the judge may allow further affidavits or discovery to take place. "The only requirement is that the parties be given a fair opportunity to present their claim." Simoneaux v. E.I. du Pont de Nemours and Co., Inc., 483 So.2d 908, 913 (La. 1986). See also. Leake & Andersson, LLP v. SIA Ins. Co. (Risk Retention Group), Ltd., XXXX-XXXX, pp. 3-4 (La. App. 4 Cir. 3/3/04), 868 So.2d 967, 969 ("Although the language of article 966 does not grant a party the absolute right to delay a decision on a motion for summary judgment until all discovery is complete, the law does require that the parties be given a fair opportunity to present their case.")
In the case of Hodges v. Southern Farm Bureau Cas. Ins. Co., 433 So.2d 125 (La. 1983), the Louisiana Supreme Court discussed the purposes of discovery:
The basic objectives of the Louisiana discovery process are (1) to afford all parties a fair opportunity to obtain facts pertinent to the litigation, (2) to discover the true facts and compel disclosure of these facts wherever they may be found, (3) to assist litigants in preparing their cases for trial, (4) to narrow and clarify the basic issues between the parties, and (5) to facilitate and expediate [sic] the legal process by encouraging settlement or abandonment of less than meritorious claims. The discovery statutes are to be liberally and broadly construed to achieve its intended objectives.
Hodges, 433 So.2d at 129 (citations omitted).
In its opposition to Mr. Ploue's motion for summary judgment, Intercoastal noted that not only had two of the three named defendants not yet appeared in this suit, but that it was unclear from the record if they had even been served. Intercoastal further urged that Mr. Ploue's ability to recover depended on whether the trial court determined he was a holder in due course of the check in question. This issue, Intercoastal argued, could only be fleshed out through discovery that it has not yet had an opportunity to conduct. We agree.
After a thorough review of the record before us, and since all the defendants have not been joined, the only possible decision on this particular record is that the record is incomplete and cannot serve as a basis for summary judgment. There are unresolved factual issues regarding Mr. Ploue's status as a holder in due course, issues that may be resolved through discovery. Accordingly, we find the granting of summary judgment to be premature.

CONCLUSION
For the above and foregoing reasons, we reverse the trial court's May 27, 2008 judgment and remand the matter to the trial court for further proceedings consistent with this opinion.[4] Additionally, Mr. Ploue's motion to dismiss Intercoastal's suspensive appeal is granted, but the appeal is converted to a devolutive appeal. All costs associated with this appeal are assessed against plaintiff, Stephen J. Ploue.
MOTION TO DISMISS SUSPENSIVE APPEAL GRANTED, DEVOLUTIVE APPEAL MAINTAINED; MAY 27, 2008 JUDGMENT REVERSED AND REMANDED.
HUGHES, J., concurring.
While I concur that summary judgment is inappropriate, our holding should in no way limit the theories of recovery plaintiff may pursue.
NOTES
[1] A second check in the amount of $63,893.62 was sent to Aero Speed by Intercoastal "for payment of agent fees." This check is not at issue in the appeal that is before us now.
[2] Louisiana Revised Statutes 9:2782.2 provides, in pertinent part, as follows:

A. Whenever any drawer of a check stops payment on the check with the intent to defraud or when there is no justifiable dispute as to the amount owed or the existence of the obligation, the drawer shall be liable to a holder in due course as defined in R.S. 10:3-302, or a person subrogated to the rights of such holder, for damages of twice the amount so owing, but in no case less than one hundred dollars, plus attorney fees and court costs, if the drawer fails to pay the obligation created by the check within thirty days after receipt of written demand for payment thereof substantially in the form provided for in Subsection C which notice is delivered by certified or registered mail.
[3] At oral arguments, counsel for Mr. Ploue made an oral motion to dismiss Intercoastal's appeal for failure to post the appeal bond, or in the alternative, convert Intercoastal's appeal to a devolutive appeal. In a suspensive appeal, the appellant must file a petition for appeal and furnish the security within the delay allowed in La. Code Civ. P. art. 2123. Wright v. Jefferson Roofing, Inc., 93-1217 (La. 1/14/94), 630 So.2d 773, 775. When the appellant fails to timely furnish the security required for a suspensive appeal, the right vests in the appellee to obtain dismissal of the suspensive appeal and to secure the right to execute on the judgment. However, the suspensive appeal is not invalid merely because the appellant does not timely furnish security. Rather, this failure merely constitutes an irregularity or defect imputable to the appellant, which may form a basis for the appellee to move for dismissal of the suspensive appeal under La. Code Civ. P. art. 2161. Blue, Williams & Buckley v. Brian Investments, Ltd., 96-1451, p. 5 (La. App. 1 Cir. 6/20/97), 706 So.2d 999, 1002, writ denied. 97-2192 (La. 11/21/97), 703 So.2d 1311. Since the elimination of the requirement of a bond for devolutive appeals, the courts have consistently held that this defect is not jurisdictional. Thus, where the appellant has failed to file the required bond, the suspensive appeal should be converted to a devolutive appeal, as long as the appellant has met those requirements. R.G. Claitor's Realty v. Rigell, 2006-2336, p. 5 (La. App. 1 Cir. 5/4/07), 961 So.2d 458, 461, writ denied, XXXX-XXXX (La. 9/21/07), 964 So.2d 340. In the instant case, the judgment at issue was signed on May 27, 2008. Intercoastal filed its motion for suspensive appeal on June 20, 2008, which the trial court granted on July 7, 2008. At the time this case was submitted for decision on appeal, the records in the trial court indicated that Intercoastal had not posted the required security with regard to this suspensive appeal. Accordingly, while Intercoastal has not filed the security necessary to maintain its suspensive appeal, it has met the requirements for a devolutive appeal. Therefore, counsel's motion to dismiss is granted insofar as it seeks to dismiss Intercoastal's suspensive appeal; however, Intercoastal's appeal is maintained as a devolutive appeal. R.G. Claitor's Realty, 2006-2336 at 5, 961 So.2d at 461-462.
[4] Because we have reversed the grant of summary judgment as premature, we pretermit discussion of Intercoastal's remaining assignment of error.