DREW, J.
liDr. and Mrs. Fox had an unhappy marriage.[1] Dr. Fox (“Michael”) was caught concealing assets, i.e., trying to hide $47,000 cash -with his parents and their corporations. But for a random traffic stop in South Carolina, he would have probably succeeded in defrauding Mrs. Fox (“Harriet”). Michael’s sly plan boomeranged, as the cash was seized by a South Carolina state trooper.[2] Michael admitted in correspondence, in so many words, that his plan was to defraud his ex-wife.[3] Now her attorney wants to protect her interests, and for that he needs financial information. This discovery dispute was triggered by Michael’s clumsy attempt at swindling Harriet out of her rightful portion of community assets.
Harriet filed a notice of records deposition only to I.C.C.D. Fox, L.L.C., and C.D.I.C. Fox, L.L.C. Service was effectuated upon C.D. Fox, Michael’s father, the managing partner of the businesses. A subpoena duces tecum was also issued to Michael, through his attorney, requesting numerous bank records. Yet another subpoena duces tecum issued, directing the two companies to produce corporate and financial records and tax returns of the company.
|2On June 5, 2012, Harriet filed another notice of records deposition only to I.C.C.D. Fox, L.L.C., through its managing partner, C.D. Fox.
On June 13, 2012, the four third party interveners[4] (I.C.C.D. Fox, L.L.C.; C.D.I.C. Fox, L.L.C.; C.D. Fox; and Irm-gard C. Fox, collectively referenced as the elder Foxes and the two Fox LLCs) filed a motion to quash the subpoena duces tecum and for a protective order. In addition the interveners sought sanctions against Harriet’s attorney, Stephen J. Katz, who they asserted had a direct financial interest in a favorable property division. Arguing that the subpoena was unreasonable, unduly burdensome, and expensive, the elder Foxes and the two Fox LLCs contended that Harriet was seeking to cause unnecessary delay and increase the cost of litigation by attacking Michael’s elderly parents and by pressuring Michael to settle. The elder Foxes and the two Fox LLCs urged that the scope of the subpoena was overbroad, vague, and a fishing expedition. The in-terveners prayed for sanctions against Harriet’s attorney, as well as attorney fees of $7,500, for the granting of their motion to quash and for a protective order.
*460 Harriet filed exceptions to the intervention, maintaining:
• Insufficiency of service of process;
• Failure to obtain leave of court to file intervention received after the filing of the answer to the principal demand;
• Failure to comply with La. C.C.P. arts. 1032 and 863;
• C.D. and Irmgard Fox have no cause or right of action; and
• The two business entities have no cause or right of action.
13At the hearing, the trial court noted that Harriet was simply conducting discovery, triggered by Michael’s ill-fated South Carolina traffic stop and the substantial cash proceeds in his possession. The court also cited Michael’s letter seeking to retrieve the seized proceeds, wherein he stated that he was taking the $47,000 “to his parents to hold for me should my marriage dissolve.” Michael also stated in his letter: “My covert intentions have been exposed to my wife. What damage is done and I have nothing to lose but time.” His letter was a smoking gun that reasonably prompted Harriet to exercise extreme diligence concerning concealment of assets.
Because Harriet was not seeking to seize property rightfully owned by any of the interveners, the trial court found that there was no need for an intervention, at least at this stage of the litigation. Specifically, the trial court ruled that neither the elder Foxes nor the two Fox LLCs had causes or rights of action in this dispute.[5]
The trial court observed that Harriet had the right to her fair share of the community and she and her attorney have a right to find out what constituted the community, where the property is located, and how they might gain access to it.
The attorney for the elder Foxes and the two Fox LLCs argue that Harriet’s subpoena was like a judgment debtor examination in scope. Amazingly, they urge in brief that Harriet had absolutely no evidence that |4either the elder Foxes or the two Fox LLCs were concealing community property.
The trial court:
• denied relief to the elder Foxes and the Fox LLCs;
• granted Harriet’s motion to compel;
• awarded a $1,000 attorney fee for her pursuit of the motion; and
• ordered that the documents be provided before a coming deposition.
To this ruling, the attorney for the elder Foxes and the two Fox LLCs noted an intent to seek supervisory writs, seeking a stay. Since the deposition was to be held in just a few days, the trial court denied a stay.
Two judgments were signed on August 6, 2012.
The first judgment denied the third party interveners’ requests to quash the subpoena, to be granted a protective order and to sanction Harriet’s lawyer. The judgment also granted Harriet’s motion to compel discovery against I.C.C.D. Fox L.L.C., ordering the corporation to produce all requested documents.
The second judgment denied the third party interveners’ request to intervene as neither of the elder Foxes nor the two Fox LLCs had causes or rights of action. That judgment was declared final and immediately appealable by the trial court.
The two Fox LLCs and the elder Foxes filed a petition for suspensive appeal of *461 both judgments. On August 21, 2012, this court issued an order directing the trial court to submit a per curiam informing the court (1) whether the applicants were part of the litigation, (2) whether the order of | ¿August 15, 2012, granted a suspensive appeal or a supervisory writ, and (3) the reasons for its ruling. The litigation was stayed in the trial court pending receipt of the requested information. The trial court’s per curiam is clear. It references the $47,000 cash and the letter as well as a $75,000 check written by Michael in favor of his father as managing partner of I.C.C.D. Fox, LLC, a limited liability corporation engaged in acquiring, managing, and selling real estate. Shortly after this check was received, the corporation in fact purchased some real estate.
The trial court denied their request for sanctions against Harriet’s attorney, finding her discovery requests to be within the scope of La. C.C.P. art. 1422. Subject to deadlines, the trial court granted Harriet’s motion to compel discovery against I.C.C.D. Fox, L.L.C. Additionally, the trial judge ordered I.C.C.D. Fox, L.L.C., or Stephen Fox to pay attorney fees of $1,000 to Harriet’s attorney for having to pursue the motion to compel.
Specifically, the trial court stated that the elder Foxes and the two Fox LLCs are not parties to this litigation. Moreover, the trial court ruled that, since this dispute was related to discovery, it was not a final judgment and was subject to review by supervisory writ. Though a close question, a writ panel of this court found that the contested judgment could be appealed, granting the writ of the elder Foxes and the two Fox LLCs. On September 13, 2012, the panel granted a suspensive appeal and remanded the matter for perfection of the appeal.

Arguments of the Elder Foxes and the Two Fox LLCs, Appellants

The elder Foxes and the two Fox LLCs complain that the trial court:
!,;• erred in failing to quash the June subpoena duces tecum in which Harriet sought to obtain records from a nonparty with service of the subpoena without service of a subpoena to compel the nonparty’s attendance for deposition, arguing that neither C.D. Fox nor the company had any obligation to appear at a certain time and date;
• erred in requiring a nonparty to appear in a parish (Morehouse) other than his domicile (Ouachita) without fixing a convenient place to take the deposition; and
• erred in not granting a protective order to limit the scope of the subpoena duces tecum.
The elder Foxes and the two Fox companies also request attorney fees and permission to intervene in the pending property partition.

Arguments of Mrs. Harriet W. Fox, Ap-pellee

Harriet asserts that the trial court correctly resolved the dispute. Since any deficiencies in service and any complaints about the location of the deposition were not raised in the trial court by the elder Foxes and the two Fox LLCs, Harriet urges that those matters are not now properly before this court. We agree.
As to the merits of the asserted deficiencies in service, Harriet notes that the subpoena duces tecum was personally and properly served on C.D. Fox as managing partner of I.C.C.D. Fox, L.L.C. She argues that no appearance would have been necessary had the company timely produced the records sought.
Concerning the objections to the scope of the discovery sought by her, Harriet correctly asserts that a party may *462 obtain discovery on any nonprivileged matter that is relevant to the dispute being litigated as long as it reasonably appears that the information sought could lead to the discovery of admissible evidence. Louisiana jurisprudence requires that discovery |7statutes be liberally and broadly construed.[6] Harriet references in support of her position the following:
• the $47,000 in cash;
• Michael’s letter in which he admits his nefarious game plan;
• the $75,000 check to the family corporation;[7] and
• the corporate purchase[8] of land immediately after the $75,000 infusion.
Harriet’s argument is compelling. The trial court correctly perceived that Michael was seeking to sandbag her as to the location and value of community proceeds. Michael has simply outsmarted himself.
The rulings of the trial court were well within its discretion. We affirm in all respects, at the cost of the appellant.
DECREE
The rulings of the trial court are AFFIRMED at the cost of Michael Wayne Fox.
APPLICATION FOR REHEARING
Before WILLIAMS, STEWART, DREW, MOORE and GARRETT, JJ.
Rehearing denied.

. A judgment of divorce was rendered on April 19, 2012, leaving open issues concerning spousal support and partition of the community property. There are no minor children. Harriet has requested periodic spousal support, including health and related insurance. She alleges that she is in need and that Michael is a dentist with much income. She also wants her rightful share of the community, and desires that her ex-husband be assessed attorney fees and court costs.

. The trooper incorrectly suspected that the proceeds might have been drug-related.

. Perhaps facetiously, Michael’s counsel urged at oral argument that his client claimed a Fifth Amendment privilege regarding this letter. That constitutional provision, of course, applies only to criminal cases in which involuntary and incriminating statements are generated pursuant to custodial interrogations taken in violation of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The Fifth Amendment is not remotely pertinent to the instant civil litigation.

.The trial court’s per curiam notes that the attorney for the third party interveners is Stephen D. Fox, who is Michael’s brother. C.D. Fox is Michael’s father. Irmgard Fox is wife of C.D. Fox and is Michael's mother.

. The trial court indicated that it could consider intervention at a later date, depending upon what transpires in this suit.

. La. C.C.P. art. 1422 and Hodges v. Southern Farm Bureau Cas. Ins. Co., 433 So.2d 125 (La.1983).

. Interestingly, Michael was the registered agent for the corporations, though with no known ownership interest, raising the ques-

. Harriet seeks the loan closing documents for the corporate real estate purchase.