545 So.2d 1094 (1989)
Clifton J. MATHERNE, et al
v.
Archbishop Philip M. HANNAN, et al.
No. 89-C-0546.
Court of Appeal of Louisiana, Fourth Circuit.
June 5, 1989.
*1095 H. Martin Hunley, Jr., Vincent Paciera, Jr., Thomas A. Rayer, Don M. Richard, New Orleans, for relator.
M.H. Gertler, New Orleans, for respondent.
Before GARRISON, KLEES and WILLIAMS, JJ.
WILLIAMS, Judge.
For the reasons assigned, certiorari is granted and the trial court's judgment which orders Father X to submit to a mental examination, Dr. Duffourc to disclose in deposition information that is protected by Father X's patient-physician privilege, and Father X to answer in-depth questions regarding his sexual history is vacated.
I. Psychiatric Examination of Father X
In regard to the psychiatric examination of Father X, the trial court's judgment of February 13, 1989 ordered:
that the motion for reconsideration is made absolute and accordingly, Father [X] shall submit to a medical examination to be conducted by Ray Bauer, M.D., within thirty days from the date of this order during which examination no other person shall be present; this medical examination shall be audio/video tape recorded in its entirety and the technician taping the examination shall set up all equipment and commence its running but absent himself from the examination; the audio/video tape and any and all reproductions or transcripts thereof may be viewed by all counsel of record, parties to this litigation and such experts employed by them but shall be subject to a protective order and shall not be disclosed for any purpose to any other person, firm or entity including their agents, employees and attorneys, except as noted herein or upon order of this Court under penalty as provided by law, including contempt.
Father X opposes the taking of the examination and, in the alternative, seeks the protection of having his counsel present during the examination. In support of his application for certiorari, Father X claims plaintiffs have not met the prerequisites needed for the issuance of the order compelling the examination, as LSA-C.C.P. art. 1464 permits the trial court to order a party to submit to a physical or mental examination by a physician only when that party's mental or physical condition is "in controversy" and "good cause" for the examination is shown. As we agree with the assertions of Father X, the ruling of the trial court which orders the examination is vacated and plaintiffs' motion is denied.
LSA-C.C.P. art. 1464 provides:

When the mental or physical condition of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action pending may order the party to submit to a physical or mental examination by a physician or to produce for examination the person in his custody or legal control, except as provided by law. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.
(emphasis added)
The source of Article 1464 is Fed.Rule Civ.Pro. 35(a). Consequently, when interpreting Article 1464, our courts often rely upon prior interpretations by federal courts of Rule 35(a), using the federal decisions as persuasive guides to the intended meaning of Article 1464. Vaughn v. Commercial Union Ins. Co. of N.Y., 263 So.2d 50, 52 (La.App. 4th Cir.1972), writ den., 266 So.2d 425 (La.1972); see Madison v. Travelers Ins. Co., 308 So.2d 784 (La.1975).
Under Rule 35(a) and Article 1464, the freedom of action that is normally afforded a party resorting to depositions and *1096 interrogatories is restricted. Schlagenhauf v. Holder, 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964); Anno: Federal Civil Procedure Rule 35, 13 L.Ed.2d 992. Instead, the decision to grant or deny a motion for examination requires the trial court to determine whether the party requesting the motion has adequately demonstrated "good cause" and met the showing of a physical or mental condition "in controversy". Schlagenhauf v. Holder, 379 U.S. at 118, 85 S.Ct. at 242. Neither Article 1464 nor Rule 35(a) differentiates between plaintiffs and defendants; their language requires only that the person to be examined be a party to the action. Schlagenhauf v. Holder, 85 S.Ct. at 240-1 [the waiver theory, that because plaintiff seeks redress for injuries in a court of law, plaintiff thereby waives his right to claim the inviolability of his person, is invalid]. Thus, as a threshold matter, Father X, a defendant, can be ordered to submit to an examination pursuant to Article 1464, if the "in controversy" and the "just cause" requirements are met.[1]
The general scope of discovery set forth in LSA-C.C.P. art. 1422 et seq., "that parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action ...", is restricted in Article 1464 by both the "in controversy" and "just cause" prerequisites, which are an express limitation on the use of the Article. See Schlagenhauf v. Holder, 85 S.Ct. at 242; Anno, 13 L.Ed.2d at 996, § 4(a). In order to meet the requirements for the issuance of an examination order, however, the movant need not prove his case on the merits. Instead, movant must only produce sufficient information, by pleadings, affidavits and/or an evidentiary hearing so that the trial court can fulfill its function under Article 1464, i.e. finding "just cause" and the condition "in controversy". Id.
In Schlagenhauf, the United States Supreme Court dealt with a situation where defendant A sought to place the mental and physical condition of defendant B in controversy by making conclusory statements in cross-claim pleadings that defendant B `"was not mentally or physically capable of operating "the bus at the time of the accident" and ... that "the eyes and vision of [defendant B] was [sic] impaired and deficient."' 379 U.S. at 120, 85 S.Ct. at 243. The Supreme Court specifically noted that defendant B never asserted his mental or physical condition either in support of or in defense of a claim. Nevertheless, the trial court ordered defendant B to submit to both mental and physical examinations by a total of nine specialists in the fields of internal medicine, ophalmology, neurology and psychiatry.
Reviewing the record, the Supreme Court found that the only showing supporting that defendant B's condition was in controversy, were the general conclusory allegations in the pleadings and the affidavit by movant's attorney which stated that 1) an eyewitness testified that before the impact he saw the truck's lights flicker ¾ to ½ mile away and 2) defendant B's deposition stated that he was involved in a prior rear-end collision and before the accident in suit he saw red lights for ten to fifteen seconds yet drove the vehicle on without altering his course. Applying the guidelines discussed supra, the Supreme Court found this record plainly revealed that movant failed to affirmatively show defendant B's mental and physical condition was in controversy and there was good cause for the requested examination. Accordingly, the Supreme Court vacated the judgment of the court of appeal and remanded the matter to district court for reconsideration in light of the guidelines promulgated. See also Wadlow v. Humberd, 27 F.Supp. 210 (W.D.Mo.1939) [in a libel action, defendant moved for but was denied, a physical and mental examination of plaintiff which defendant sought to support his defense of the truth of the allegedly libelous medical journal article, so that he could show that plaintiff was suffering from the various physical and mental conditions mentioned *1097 in the article. Held: Rule 35 contemplated only cases where the mental and physical conditions of a party was immediately or directly in controversy and the plaintiff's physical and mental condition was only incidentally or collaterally involved.].
Applying these principles to the case before us, it is patently obvious that plaintiffs have failed to show that the mental condition of Father X is in controversy and there is good cause for the requested examination. At no time has Father X asserted his mental condition either in support or defense of a claim. Instead, it is the plaintiffs who are seeking to place his mental condition in controversy, merely because co-defendant Cobb made uncorroborated allegations that Father X sexually assaulted him (Cobb) and/or "made frequent sexual assaults on children".
Plaintiffs' reasoning is Father X's mental condition is in controversy because Father X has denied Cobb's allegations. Thus, actual controversy has been created because one of the psychologists involved in this matter testified that "denial" is a common response of pedophiles. Contrarily, we note that denial is also a common response to false allegations. And at this point, there is no evidence supporting Cobb's accusations, as the four children (now aged 26) which Cobb identified as being some of Father X's other sexual molestation victims, have also denied the accusations. Even Dr. Duffourc, Father X's psychiatrist, has testified that he has no concerns about Father X being a pedophile.
It must be remembered that plaintiffs do not claim that Father X sexually molested them. Their claim is that Father X may be liable to them because if Father X sexually molested Cobb twelve to fifteen years ago, that action might be a causal factor behind Cobb's sexual molestation of them.[2] Consequently, in the context of the flimsiness of their theory of action against Father X and the fact that Cobb's allegations are uncorroborated, plaintiffs have failed to sustain their affirmative burden of proving Father X's sexual orientation is a matter in direct controversy in this suit and have failed to show good cause for their psychiatric fishing expedition.
For the reasons stated above, we find the trial court grossly erred by not considering the requirements of Article 1464 and/or for finding the plaintiffs' met the requirements of that Article. Issuing the order for the examination was a clear abuse of the trial court's discretion.
II. Motion to Compel
The trial court granted plaintiff's motion compelling Dr. Duffourc, a child psychiatrist, to answer deposition questions in regard to "any information and/or facts that may be reasonably connected or relevant to his September 29, 1986 letter to Father Warren L. Boudreaux". Father X opposes this motion because he claims the information plaintiffs seek to discover is protected by his physician/patient privilege. Plaintiffs, however, counter this claim by asserting that Father X waived his physician/patient privilege when he signed a waiver to allow Dr. Duffourc who had treated him for two and one-half years before this suit was filed, to send a letter dated September 29, 1986, regarding his mental condition to Bishop Boudreaux. In its reasons for judgment, the trial court explained that by "delivery of the 29 September 1986 letter by Rene Duffourc, M.D. to Father Warren L. Boudreaux, Father [X] waived the doctor-patient privilege regarding any information that is reasonably connected and relevant to that letter." For *1098 the reasons stated below, however, we disagree with the trial court's conclusion and find that Father X's limited waiver of his physician-patient privilege extended to only the information obtained by Dr. Duffourc during the single examination from which the September 29, 1986 report was prepared.
Father X was a patient of Dr. Duffourc's long before Cobb's allegations surfaced. But after Cobb made his allegations, Father X was instructed by his Bishop to undergo an examination by Dr. Duffourc and to authorize Dr. Duffourc to provide the results of the examination to Bishop Boudreaux. With a single visit, the examination was completed and the report was prepared. This report did not contain information about Father X's previous treatments or examinations, the report pertained only to the single visit/examination.
On December 6, 1988, Dr. Duffourc was deposed concerning his report of September 29, 1986. During that deposition, Dr. Duffourc asserted the physician-patient privilege to several questions that sought information known only from Dr. Duffourc's medical treatment of Father X on occasions other than the single examination for Bishop Boudreaux's report. We find he acted properly in refusing to answer the questions as the information sought is privileged.
Father X had been ordered by his Bishop, in light of Cobb's allegations, to submit to an examination. Being an obedient priest, he complied with the order. By clear implication, the coerced waiver was limited to only that single examination and the report on that examination. The waiver provided no greater sweep into Father X's medical history than if he had gone to a psychiatrist that he had never been to before or since.
Thus, due to both the grave questions as to the voluntariness of the limited waiver and the remarks made by this court in writ 88-C-2073 pertaining to the discovery of Father X's medical records held by Ochsner, the trial court's order sanctioning the discovery of "any information and/or facts that may be reasonably connected or relevant to the September 29, 1986 letter," is an abuse of the trial court's discretionary power. The order is, therefore, vacated and the plaintiffs' motion denied.
III. Compelling Father X to Answer All Questions about His Sexuality/Sexual History
Father X has already submitted to two days of depositions. Being unsatisfied with the information gained so far, plaintiffs through their various motions are attempting to force further inquiry into areas that, if sanctioned, would permit an invasion of Father X's right of privacy.[3] We find, however, that for the same reasons this information is not "in controversy" (Section I, supra) the information sought is not reasonably calculated to lead to the discovery of admissible evidence, so that the information is not discoverable under LSA-C.C.P. art. 1422. cf. Doe v. Father James Kilgour (La.App. 4th Cir.1989) (unpublished).
Consequently, as the plaintiffs' discovery attempts regarding Father X's sexual history and/or sexual orientation appear to be generated for no reasons other than harrassment, vexation and/or settlement value, we find the trial court's rulings that would allow unbridled inquiry into Father X's sexual history an abuse of discretion.
Accordingly, we vacate the trial court's judgment, deny the plaintiffs' motions and order the trial court to fashion a Protective Order for Father X that is consistent with the principles outlined in this order.
NOTES
[1] Such as when "a defendant who asserts his mental or physical condition as a defense to a claim ..., for example, where insanity is asserted as a defense to a divorce action." Schlagenhauf v. Holder, 85 S.Ct. at 243, cites omitted.
[2] At best, plaintiffs' theory of action against Father X is flimsy. A less tenuous theory would be one against Cobb's parents or the physician who delivered him. Because, if Cobb had not been born, it is a certainty that he would not have sexually molested plaintiffs. (The tortious conduct of the parents and physician being the bringing of a child molester into the world.) With fewer IFS involved, the probability of causation has surer ground.

Another amazing aspect of this suit is plaintiff, a third party to Father X, is basing his claim against Father X on facts that Father X's alleged victim, Cobb, would be barred from asserting. See Doe v. Reverend H. Doug Ainsworth, 540 So.2d 425 (La.App. 1st Cir.1989), writ den., 542 So.2d 511 (La.1989).
[3] This issue is tied to the scope of the questions to be allowed in the mental examination. Hence, by denying the mental examination of Father X, this issue is ostensibly moot.