713 So.2d 583 (1998)
Harry F. CONNICK, District Attorney of Orleans Parish
v.
J. Berengher BRECHTEL, Scott P. Shea, Bill Bowers, et al.
No. 98-C-0543.
Court of Appeal of Louisiana, Fourth Circuit.
April 22, 1998.
*584 Robert L. Clayton, Thomas Keiffer, Sr., Karen Wells Roby, Sherry L. Tew, Pamela W. Carter, New Orleans, for Relators.
William F. Wessel, Raymond R. Egan, Wessel & Associates, New Orleans, and Camille Buras, First Assistant District Attorney Orleans Parish, New Orleans, for Respondent.
Before KLEES, BYRNES and PLOTKIN, JJ.
PLOTKIN, Judge.
Defendants, certain members of the Orleans Parish School Board seek supervisory review of a trial court judgment granting a motion to compel discovery filed by plaintiff, Harry F. Connick, District Attorney of Orleans Parish in this suit seeking to void certain actions allegedly taken by the School Board in violation of the Louisiana Open Meetings Law, LSA-R.S. 42:4.1 et seq. We affirm the trial court judgment ordering the School Board members to answer deposition questions concerning matters discussed and actions taken during an executive session.

Facts
On December 9, 1997, the School Board announced that a "special meeting" would be held the following day, December 10, 1997, for the following stated purposes: (1) to act on a resolution to appoint special counsel for employment-related matters; and (2) to recess into a committee of the whole meeting for the purpose of interviewing applicants for board vacancy in District 1. On December 15, 1997, a special meeting was convened. The minutes reflect that all defendants were present at the public special meeting, along with New Orleans School Superintendent, Dr. Morris Holmes, and an attorney, Robert Rosenberg. After the recitation of the Pledge of Allegiance, the School Board immediately recessed into executive session behind closed doors "to consider personnel matters."
Following the executive session, the School Board reconvened the public special meeting, after which School Board member Dr. J. Berengher Brechtel stated that the purpose of the special meeting was for the Board to recess immediately into executive session to discuss personnel matters and to take the following actions: (1) fill the vacancy in District 1, and (2) swear in a new Board member from District 7. Dr. Brechtel then added that the Board would also consider "any emergency item(s) properly presented by the Superintendent and/or Board members." The minutes reflect that the School Board then *585 filed the vacancy in District 1 and swore in a new Board member from District 7.
At that point, one of the School Board members moved to add the following item to the agenda:
To discuss and resolve the release of the Board's contractual obligations to have Dr. Holmes continue to serve as Superintendent from July 1, 1998 to April 7, 2000.
The motion was unanimously carried and Dr. Brechtel read a statement into the record which indicated that Dr. Holmes and the School Board had already agreed that it was in the best interest of the school district that Dr. Holmes no longer continue to serve as superintendent effective July 1, 1998. Dr. Brechtel then asked School Board member Gail Glapion to read a resolution into the record; that resolution recited the Board's agreement to pay Dr. Holmes a lump-sum settlement of $210,000.00 for the release of any continuing obligation under his July 22, 1997 contract. Dr. Brechtel then stated that the Board would inform the public about the "total package," after everything had been worked out "with all of the agreements."

Procedural history
The instant suit was filed on February 5, 1998 by D.A. Connick against defendants J. Berenger Brechtel, Scott P. Shea, Bill Bowers, Gail M. Glapion and Carolyn Green Ford, all members of the School Board. Based on the facts recited above, D.A. Connick claims that the School Board took improper actions in violation of Louisiana's Open Meetings Law, LSA-R.S. 42:4.1 et seq., during the December 15, 1997 executive session, when it agreed to the contract settlement with Dr. Morris Holmes.
Initially, Mr. Connick noticed the depositions of the School Board members, whereupon they filed a Motion to Quash Depositions, which was denied by the trial court. This court denied writs on that judgment on the showing made, finding no reason to interfere with the orderly process of the trial court. Connick v. Brechtel, 98-C-0444 (La. App. 4 Cir. 2/26/98), unpub.
Thereafter, Mr. Connick attempted to take the Ms. Glapion's deposition. The writ application contains an excerpt from Ms. Glapion's February 26, 1998 deposition, in which she was advised by her attorney "not to disclose the content of executive session conversations" pertaining to the meeting wherein the Board agreed to buy out Dr. Holmes' contract.
Accordingly, on February 27, 1998, D.A. Connick filed the Motion to Compel which is the subject of the instant writ application, seeking a judgment ordering the defendants to answer all questions pertaining to matters discussed and actions taken in private or in executive sessions of the School Board relating to the contract settlement reached with Dr. Holmes. On March 3, 1998, the trial court granted Mr. Connick's Motion to Compel, ordering the School Board members "to answer questions with regard to events and discussions held during executive session, with the exception of those questions which infringe on the attorney-client privilege."
In filing the instant writ application, the School Board members claim that the trial court erred in broadly ordering them to respond to questions about what went on in the executive session because it "nullifies and completely eviscerates the purpose and intent" of LSA-R.S. 42:6.1(A)(1). That provision establishes an exception to the open meeting requirement, allowing executive sessions to discuss the "character, professional competence, or physical or mental health of a person." Relators argue that such material is privileged and therefore exempt from discovery.

Open meetings law
LSA-R.S. 42:4.1, relative to public policy for open meetings, provides as follows:
It is essential to the maintenance of a democratic society that public business be performed in an open and public manner and that the citizens be advised of and aware of the performance of public officials and the deliberations and decisions that go into the making of public policy. Toward this end, the provisions of R.S. 42:4.1 through R.S. 42:10 shall be construed liberally.
The primary purpose of Louisiana's Open Meeting Law, which ensures the right *586 of citizens to participate in deliberations of public bodies, is to protect citizens from secret decisions made without any opportunity for public input. Delta Development Co., Inc. v. Plaquemines Parish Commission Council, 451 So.2d 134 (La.App. 4 Cir.), writ denied, 456 So.2d 172 (La.1984). LSA-R.S. 42:5 provides that "[e]very meeting of any public body shall be open to the public unless closed pursuant to R.S. 42:6, R.S. 42:6.1, or R.S. 42:6.2."[1]
LSA-R.S. 42:6, relative to executive sessions, provides an exception to the open meetings requirement established by LSA-R.S. 42:4.1. That statute provides as follows:
A public body may hold executive sessions upon an affirmative vote, taken at an open meeting for which notice has been given pursuant to R.S. 42:7, of two-thirds of its constituent members. An executive session shall be limited to matters allowed to be exempted from discussion at open meetings by R.S. 42:6.1; however, no final or binding action shall be taken during an executive session. The vote of each member on the question of holding such an executive session and the reasons for holding such an executive session shall be recorded and entered into the minutes of the meeting. Nothing in this Section of R.S. 42:6.1 shall be construed to require that any meeting be closed to the public, nor shall any executive session be used as a subterfuge to defeat the purposes of R.S. 42:4.1 through R.S. 42:8.
LSA-R.S. 42:6.1(A)(1) provides that a public body may hold an executive session pursuant to LSA-R.S. 42:6 for the following purpose, inter alia:
(1) Discussion of the character, professional competence, or physical or mental health of a person, provided that such person is notified in writing at least twentyfour hours before the meeting and that such persons may require that such discussion be held at an open meeting, and provided that nothing in this Subsection shall permit an executive session for discussion of the appointment of a person to a public body. In cases of extraordinary emergency, written notice to such person shall not be required; however, the public body shall give such notice as it deems appropriate and circumstances permit.
In Brown v. East Baton Rouge Parish School Board, 405 So.2d 1148 (La.App. 1 Cir.1981), two suits were brought by the District Attorney for the Parish of East Baton Rouge Parish and the League of Women Voters of Baton Rouge, respectively, against the East Baton Rouge School Board, seeking to void the School Board's actions taken in connection with its search for a new school superintendent. A search committee comprised of the School Board and one other person met in executive session twice, purportedly to discuss the character, competence, and physical and mental health of applicants for the position. Id. The School Board reconvened after each executive session, then nominated applicants and voted for them, narrowing the field of applicants. After the second narrowing action, the suits were filed. Id.
In response to the suits, the School Board cited LSA-R.S. 42:6.1(A)(1), as have the relators in the instant writ application. The plaintiffs answered, claiming that the School Board exceeded the bounds of the statutory exception by going further than merely discussing the character, professional competence, or physical or mental health of the applicants. Id. The trial court agreed, finding that the School Board moved from strict discussion to a selection process, which included a vote or polling of the committee members. Id. On appeal by the School Board, the appellate court agreed with the trial court's interpretation of the open meetings law and the exception provided by LSA-R.S. 42:6.1. However, the trial court made its findings after a trial on the merits in which all of the details of the executive meeting came out.
In the instant case, D.A. Connick has exercised his right pursuant to LSA-R.S. 42:9 to file a suit to void an alleged violation *587 of Louisiana's Open Meetings Law. In his petition, D.A. Connick alleges that the settlement agreement between the School Board and Dr. Holmes "was deliberated upon and ratified by the Board in a closed executive session on December 15, 1997" in violation of LSA-R.S. 42:6, which expressly prohibits "final or binding action" being taken during an executive session. D.A. Connick's allegations are essentially the same as those made by the Brown plaintiffs. If his allegations are proven, the School Board unquestionably violated Louisiana's Open Meetings Law.
Moreover, D.A. Connick cannot prove his allegations without presenting evidence concerning the discussions and actions taken in the December 15, 1997 executive session. D.A. Connick claims that the School Board effectively entered into a binding agreement with Dr. Holmes regarding the settlement of his employment contract. D.A. Connick has an absolute right to discover information necessary to proper preparation for trial of this case, as allowed by the Louisiana Code of Civil Procedure articles governing discovery.

Scope of discovery
"Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." La. C.C.P. art. 1422. "After commencement of the action, any party may take the testimony of any person, including a party, by deposition upon oral examination." La. C.C.P. art. 1437. "A trial court has broad discretion in handling discovery matters." Rullan v. Adobbati, 96-0848, p. 2 (La.App. 4 Cir. 5/8/96), 674 So.2d 417, 419, writ denied, 96-1414 (La. 9/13/96), 679 So.2d 387, citing Laburre v. East Jefferson General Hosp., 555 So.2d 1381 (La.1990).
The Louisiana Supreme Court has delineated the "basic objectives" of the Louisiana discovery process as follows:
(1) to afford all parties a fair opportunity to obtain facts pertinent to the litigation,
(2) to discover the true facts and compel disclosure of these facts wherever they may be found, (3) to assist litigants in preparing their cases for trial, (4) to narrow and clarify the basic issues between the parties, and (5) to facilitate and expedite the legal process by encouraging settlement or abandonment of less than meritorious claims.
Hodges v. Southern Farm Bureau Cas. Ins. Co., 433 So.2d 125, 129 (La.1983) (citations omitted). "The discovery statutes are to be liberally and broadly construed to achieve [their] intended objectives." Id.
The School Board members claim that the December 15, 1997 executive session was convened in order to discuss the character, professional competence, or physical or mental health of Dr. Holmes, as allowed by LSA-R.S 42:6.1. Thus, they contend, their discussions and actions are protected from discovery because they are privileged. However, they offer no authority for their assertion that their discussions and actions at the executive session are privileged. LSA-R.S. 42:6.2 allows the discussion of certain, extremely limited matters in executive session as an exception to the strict rule that all public business be discussed and conducted in public. However, the fact that some matters may be discussed in executive session does not render the School Board's discussions and actions taken in executive session privileged. Such a rule would completely nullified Louisiana's Open Meetings Law because it would allow public bodies to engage in unlimited discussions and actions during executive sessions, then would shield those discussions and actions from discovery.
Moreover, the argument of the School Board members in this case ignores D.A. Connick's contention that the executive session moved beyond discussion to action, which is expressly prohibited by LSA-R.S. 42:6. LSA-R.S. 42:6 cannot be used to create a privilege concerning discussions and actions prohibited by the express terms of the statute.
Accordingly, we find no abuse of trial court's great discretion in discovery matters in his granting of the Motion to Compel filed by D.A. Connick. That judgment is affirmed and the case is remanded to the trial court for further actions consistent with this decision.

Request for protective order
In their opposition to plaintiff's Motion to Compel, the School Board members *588 requested a protective order concerning any discussion concerning Dr. Holmes' character, professional competence, or physical or mental health; the trial court denied that request. Under La. C.C.P. art. 1426, a protective order can be issued prohibiting parties from inquiring into certain matters. LSA-R.S. 42:6.1(A)(1) clearly allows a public body to discuss the character, professional competence, or physical or mental health of a person in a private, executive session, unless the person who is the subject of the discussion specifically requests that such discussion be done at a public meeting. However, as noted above, LSA-R.S. 42:6.1(A)(1) does not create a privilege protecting such discussions from discovery. The only limitations on discovery of the matters discussed and actions taken at the December 15, 1997 executive session are those imposed by the codal articles governing discovery. Thus, the trial court properly denied the request for a protective order; that denial is affirmed.

In camera inspection
In their prayer, the School Board members request that, in the event this court concludes that plaintiff is entitled to conduct discovery of the information discussed in the executive session, the trial court be required to conduct an in camera inspection of the deposition testimony and preclude the use or disclosure of information that falls within the purview of LSA-R.S. 42:6.1. We deny that request.
WRIT GRANTED; RELIEF DENIED.
BYRNES, J., concurs.
BYRNES, Judge, concurring.
I agree entirely with both the reasoning and result of the majority, especially the finding that LSA-R.S. 42:6.1 does not create a privilege. I concur merely for the purpose of exploding the dilemma posed by this case.
On the one hand the relators contend that by allowing discovery of executive proceedings we nullify the effectiveness of the "executive session" exceptions to the open meetings law found in LSA-R.S. 42:6. On the other hand, as the majority makes clear, if we do not permit such discovery, the entire open meetings law can be frustrated.
Where the requirements of openness cannot be reconciled with the executive session exceptions, then openness must prevail because of "the broad public policy of openness." Brown v. East Baton Rouge Parish School Board, 405 So.2d 1148, 1154 (La.App. 1 Cir.1981).
Moreover, the dilemma here is more false than real. A substantial purpose of the executive session exceptions is to provide for unimpeded discussion at the time of the discussion. After the fact discovery of such discussion is not the same impediment to discussion as contemporaneous disclosure would be. Therefore, the discovery permitted by the majority in the instant proceedings has less potential for damage to the effectiveness of the executive session exceptions than the contrary result would have to the effectiveness of the open meetings law.
NOTES
[1] La. R.S. 42:6.2 concerns executive or closed meetings of legislative houses and committees. It is not applicable to the facts of this case.