JjDENNIS R. BAGNERIS, Sr., Judge.
The relator seeks supervisory review of the trial court’s order granting the plaintiffs’ Motion to Quash and Motion for Protective Order regarding the relator’s request for production of tissue samples. FACTS
Dr. Andrew Patrick, along with his wife and children, filed a petition for damages against LSU in 1993, prior to his death, alleging he contracted malignant mesothe-lioma partially as a result of exposure to asbestos in several buildings at the LSU Medical Center in New Orleans (LSU). Dr. Patrick died in May 1994, and his surviving spouse and children remain named plaintiffs along with the Estate of Dr. Patrick.
Tissue samples were taken from Dr. Patrick before he died to determine the extent and progression of his illness, and the material is in the custody and control of Our Lady of the Lake Regional Medical Center in Baton Rouge. LSU previously had an expert examine the tissue samples and slides in 1997, and on February 15, 2002, LSU notified the plaintiffs that it intended to subpoena the material for examination by another expert. The plaintiffs opposed LSU’s request, and on February 21, 2002, they filed a l2Motion to Quash LSU’s subpoena and also motioned for a protective order precluding LSU from obtaining the tissue samples and slides. The plaintiffs argued that this subsequent review would be an unnecessary and duplicative second independent medical examination of the plaintiff. LSU argued that review of the tissues samples and slides pursuant to a subpoena duces tecum does not constitute an independent medical examination. On May 3, 2002, the trial court heard and granted the plaintiffs motions, and on May 21, 2002, the trial court’s ruling was reduced to writing.
DISCUSSION
In general, “parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action.” La. C.C.P. art. 1422. Connick v. Brechtel, 98-0543, p. 7 (La.App. 4 Cir. 4/22/98), 713 So.2d 583, 587. The Louisiana Supreme Court has delineated the “basic objectives” of the Louisiana discovery process as follows: (1) to afford all parties a fair opportunity to obtain facts pertinent to the litigation, (2) to discover the true facts and compel disclosure of these facts wherever they may be found, (3) to assist litigants in preparing their cases for trial, (4) to narrow and clarify the basic issues between the parties, and (5) to facilitate and expedite the legal process by encouraging settlement or abandonment of less than meritorious claims. Connick, 98-0543, p. 7-8, 713 So.2d at 587, citing Hodges v. Southern Farm Bureau Cas. Ins. Co., 433 So.2d 125, 129 (La.1983) (citations omitted). “The discovery statutes are to be liberally and broadly construed to achieve [their] intended objective.” Id.
Pursuant to La.Code Civ. P. art. 1464, a party plaintiff may be compelled to submit to a physical examination as part of the discovery process. La.Code Civ. P.art. 1464 reads as follows:
*1201 | ..¡When the mental or physical condition of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a physician or to produce for examination the person in his custody or legal control, except as provided by law. In addition, the court may order the party to submit to an examination by a vocational rehabilitation expert or a licensed clinical psychologist who is not a physician, provided the party has given notice of intention to use such an expert. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.
When the source provision of article 1464 was enacted, (former article 1493), it was virtually identical to Subsection (a) of Rule 35 of the Federal Rules of Civil Procedure.[1] Williams v. Smith, 576 So.2d 448, 450 (La.991). Our state discovery rules were obtained from the federal rules, and we may look for guidance to the federal decisions that have interpreted identical provisions. Williams, 576 So.2d at 450, citing Madison v. Travelers Insurance Co., 308 So.2d 784 (La.1975). In interpreting La.C.C.P. art. 1464, Louisiana courts have relied upon prior interpretations of Fed.R.Civ.P. 35(a) by the federal courts, using federal decisions as persuasive guides to the intended meaning of article 1464. Williams, 576 So.2d at 450, citing Matheme v. Hannan, 545 So.2d 1094 (La.App. 4 Cir.1989).
*1202 LSU argues that the trial court erred in agreeing with the plaintiffs that production of tissue samples from the now deceased Dr. Patrick is analogous to an IME. We are unable to find a Louisiana state court case on point, but the federal court in Eastern District of Louisiana has found that “a pathologist’s or other expert’s examination of tissue samples taken from the body of a person who is now deceased is sufficiently analogous to an examination under Rule 35(b) so that all parties have a right to the type of information set forth in that rule.” Coates v. AC & S, Inc., 133 F.R.D. 109, 110, 21 Fed. R.Serv.3d 94 (E.D.La.1990).
Based either on the trial court’s vast powers to control and limit the scope of discovery or on the persuasiveness of the Coates decision, we find that the trial court acted within its discretion in granting plaintiffs’ Motion to Quash LSU’s second request for examination of the tissue and slides taken from Dr. Patrick. LSU had the opportunity to submit the tissue samples and slides to as many experts as it desired when the materials were originally made available in 1997. We find that any claims by LSU that the plaintiffs have had more regular and extensive access to the tissue samples and slides are unsubstantiated in the record before this Court. Consequently, we find | Bthat the trial court was within its discretion in granting plaintiffs’ Motion to Quash and Motion for Protective Order.
Further, the relator argues for the first time in its reply brief that a specific test is now available to it that was not available to it in 1996 when LSU originally tested the tissue samples of the now deceased plaintiff. The relator claims that the test for the presence of simian virus 40 (“SV40”) became available in 1997 to establish a potential causative link between SV40 and mesolioma, that is, a cause of death unrelated to exposure to asbestos.
Pursuant to Rule 2-12.6 of the Uniform Rules for the Courts of Appeal, the appellant may file a reply brief, if he has timely filed an original brief, but it shall be strictly confined to rebuttal of points urged in the appellee’s brief. No further briefs may be filed except by leave of court. It is only in an exceptional case that despite an appellant’s failure to raise or notice an issue until its reply brief on appeal should substance prevail over this procedural rule restricting the reply brief to rebuttal points raised in the appellee’s brief. See Peterson v. Jefferson Parish, 95-711 (La.App. 5 Cir. 5/28/97), 695 So.2d 1057. In Peterson, the Fifth Circuit Court of Appeal originally found as follows:
Rule 2-12.6 of the Uniform Rules for the Courts of Appeal provides that a reply brief shall be “strictly confined to rebuttal of points urged in the appellee’s brief.” In the instant case, the defendant’s reply brief goes beyond mere rebuttal and attempts to raise a new legal argument, namely that the plaintiff failed to prove his case. The defendant could have made this argument at trial but instead chose not to put on a case. Further, the defendant could have raised this argument as an assignment of error but, for whatever reason, did not do so. In short, we do not address the question of the defendant’s knowledge pursuant to La.R.S. 9:2800 because that issue is beyond the scope of our review.
Peterson v. Parish of Jefferson, 668 So.2d 1386 (La.App. 5 Cir.1996). The Louisiana Supreme Court remanded the ease to the court of appeal to consider and to rule on the notice issue, “which is an element of the cause of action that the plaintiff must prove. This issue was raised in the Parish’s reply brief and should have been *1203 addressed by the court of appeal.” Peterson v. Parish of Jefferson, 96-0854 (La.5/10/96), 672 So.2d 670. On remand, the Fifth Circuit Court of Appeal found that judgment in favor of a motorist for damages to a vehicle caused by a pothole had to be reversed, given the absence of any evidence in the record showing that the parish had either actual or constructive notice of the pothole, as statutorily required, despite the parish’s failure to raise this issue until the reply brief. Peterson, 95-711, 695 So.2d 1057.
In the instant case, in contrast, the issue of additional medical testing of the tissue samples was raised both at the trial level and in the initial application of the relator. The relator, however, failed to specify either at the trial level or in the initial application that it was requesting access to the tissue samples for a second time in order to perform a new type of test previously not available to it in 1996. This Court has held that issues raised in the reply brief on appeal that did not form a basis for an appeal and relative to which the trial court did not issue any judgment would not be addressed on appeal. Gygax v. Brugoto, 92-0003 (La.App. 4 Cir. 11/30/94), 646 So.2d 1236. The trial court specifically addressed the arguments of both parties that additional, nonspecific, testing was at issue. We find that to allow the relator to argue for a new, specific test, for the first time in the reply brief would amount to an “attempt to expand the scope of the appeal [which] constitutes a violation of Rule 2-12.4 and Rule 2-12.6 of the Uniform Rules of Courts of Appeal. Rule 2-12.4 requiring] that the appellant’s brief state the alleged errors for review, and Rule 2-12.6 specifies that the reply brief ‘shall be |7strictly confined to rebuttal of points urged in the appellee’s brief.’ ” Outdoor Systems, Inc. v. Entergy Corp., 2001-0613 (LaApp. 4 Cir. 12/19/01), 804 So.2d 848.
Accordingly, we find that the relator’s argument regarding the SV40 test, raised for the first time in the reply brief, should be stricken.
WRIT GRANTED; JUDGMENT OF THE TRIAL COURT AFFIRMED.

. Rule 35. Physical and Mental Examinations of Persons:
(a) Order for Examination. When the mental or physical condition (including the blood group) of a party or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a suitably licensed or certified examiner or to produce for examination the person in the party's custody or legal control. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.
(b) Report of Examiner.
(1)If requested by the party against whom an order is made under Rule 35(a) or the person examined, the party causing the examination to be made shall deliver to the requesting party a copy of the detailed written report of the examiner setting out the examiner’s findings, including results of all tests made, diagnoses and conclusions, together with like reports of all earlier examinations of the same condition. After delivery the party causing the examination shall be entitled upon request to receive from the party against whom the order is made a like report of any examination, previously or thereafter made, of the same condition, unless, in the case of a report of examination of a person not a party, the party shows that the party is unable to obtain it. The court on motion may make an order against a party requiring delivery of a report on such terms as are just, and if an examiner fails or refuses to make a report the court may exclude the examiner's testimony if offered at trial.
(2) By requesting and obtaining a report of the examination so ordered or by taking the deposition of the examiner, the party examined waives any privilege the party may have in that action or any other involving the same controversy, regarding the testimony of every other person who has examined or may thereafter examine the party in respect of the same mental or physical condition.
(3) This subdivision applies to examinations made by agreement of the parties, unless the agreement expressly provides otherwise. This subdivision does not preclude discovery of a report of an examiner or the taking of a deposition of the examiner in accordance with the provisions of any other rule.